Mr. Townsend, you're there, right? I'm here. Can you hear me, sir? Sure can, just fine. Thank you. Mr. Townsend, you want to proceed, please? Thank you, your honor. And I've reserved four minutes for rebuttal. Okay. Lucas Townsend for defendant appellant Optum RX. And as we said in April 2018, in Optum's arbitration motion, the district court has no original jurisdiction. Mr. Townsend, could you, and I know that we have raised the jurisdictional question for both of counsel to respond to, but could you, for someone like me who is not acquainted with the actual distribution system that is the center of this litigation, explain just how it worked for purposes of this case, that is the pharmacies, which, and this complicates matters in my understanding, pharmacies aren't always pharmacies, as I understand it, under the contractual language that has been used in some of the contracts here. Just what are the entities and how does the process of distribution of the drugs and pharmaceuticals work? Well, I'll just say at the outset that we are still at the 12B6 motion. So for purposes of the issue before the court, we take the allegations of the complaint as pleaded. In general, Optum RX has members and really the issue concerns contracts that were entered into by Optum's predecessor corporations, Cater Moran and NFC. The pharmacies contract to attain access to Optum's members and they often do this through PSAOs, which are bargaining agents for the pharmacies. And so the pharmacies, often the PSAOs are owned by some of the largest drug wholesalers in the nation. So they're very large entities. They contract with Optum for terms that allow access to Optum's members and reimbursement network. And that then binds the pharmacies to the contractual terms. So that is in general at a high level what the, how the system operates. And again, we are, for purposes of this proceeding, we're accepting the allegations of the complaint as true because we're before the court on a 12B6 motion. But I understand, but this is, this is pretty basic stuff that hardly requires discovery to actually, actually describe what the roles of these entities are, which have been identified in the initial pleading, right? Correct, Your Honor. Correct. And so with that, with that background, I'm happy to begin with the jurisdictional question, if the court would like to begin there because it is a threshold question. And we do believe that the district court lacks original jurisdiction in this case. Very clear. You really, you really think that the district court, pursuant to a statute that virtually everyone who knows it acknowledges is you, its purpose is jurisdictional and its policy was to cause a vast migration into the federal courts of state court cases. You really think that there was not jurisdiction between the district court here, that that was the intent of Congress? Original jurisdiction. Yes, Your Honor. Because it's called the Class Action Fairness Act, not the class action. Which despite the legal fiction that is incorporated into this statute, a mass action is not. It simply is declared to be. It's deemed to be a class action. It is deemed to be. That is correct, Your Honor. And I think that's a key point. And class actions were the very target of CAFA. That is correct, Your Honor. And so the Congress did intend to expand jurisdiction over class actions. But with respect to mass actions, Congress intended only to close a loophole for the removal provisions for class actions. And the Supreme Court acknowledged that in one decision where the court substantively analyzed the mass action provisions of CAFA. The Supreme Court acknowledged that the mass action provision really operates as a backstop to the removal provisions and the jurisdictional provisions for class actions. But it is not. The Congress did not enable, it did not intend to enable, a new category of federal litigation. Congress was trying to rein in perceived abuses in the class action context. Abuses that were going on as it was perceived in state courts throughout the country and specific state courts. That was largely the purpose behind it. That is correct, Your Honor. That is correct, Your Honor. And so the mass action provision, again, it doesn't enable a new category of litigation in federal court, but it does allow for the removal of mass actions that are filed in state court as a workaround to the class action provisions. Has any court of appeals taken the position that you have just espoused with respect to mass action? No, Your Honor. No court has. And in fact, a few courts have discussed the ambiguity or potential ambiguity of the 1332 D23 through 10, but none have held that there is a lack of original jurisdiction. None have held. I would not characterize it as an ambiguity, though. I think the statute is quite unambiguous in saying that a mass action shall be deemed to be a class action removable, under subparagraph two. And that word is very clear and has a very definite meaning. There is no grant of original jurisdiction over mass actions. And as we explained in our supplemental brief, there are other textual indications that this is exactly what Congress had intended to do. There are special benefits that are granted to remove mass action, such as restrictions on transfer or tolling of claims that are not granted for any case that is originally filed in the district court. It would be quite anomalous for Congress to have those disparities if, in fact, a mass action could be filed directly in the district court. And it makes sense, once one realizes that Congress was not enabling mass actions to be filed in the district court in the first instance. The removal, the general removal provision also speaks, this is the general removal statute, 20 U.S.C. 1441, expressly provides for removal where there was original jurisdiction in a district court. But the specific removal statute, section 1453, for class actions and mass actions, does not have that same language. That would make sense if Congress did not intend for original jurisdiction in the district courts over mass actions. Congress's findings also reinforce the point that I had made earlier about the purposes of the mass action provision. Really, it acts as a to the class action removal provisions. And not as a grant of new substantive authority over a category of cases called mass actions. I don't want to cut you off, but if my colleague is satisfied with that answer, I'm wondering if I could turn your attention to the jurisdictional argument that arises from the distinction between challenge to the arbitration clause and a challenge to the contract as a whole and get into that. The Buckeye line of cases. Yes, Your Honor. I think really, so there is authority for that being a jurisdictional issue. And this court has said in cases that the presence of a valid and enforceable arbitration provision generally means that a court does not possess jurisdiction over the issue. I think the more direct answer, though, to the preservation point is that the district court has actually decided this issue. And it's important to realize that the issue was presented and is being presented as a challenge to formation, the existence of a contract. I understand the argument. But it seems to me when they challenge the contract or the arbitration clause, it's always focused on the arbitration clause. And they're arguing that which makes the contract unconscionable is the language that precludes them from finding out about the substance of the contract, the substance here being the arbitration clause. And they're saying, look, we never agreed to the arbitration clause. We didn't know it was there. Now, that's different than the line of cases, it would seem to me, where the challenge is to the contract. There's an agreement to arbitrate those kinds of provisions. But in those cases, there wasn't a carving out, if you will, and I think MDM is the best example of this, that there wasn't a separate carving out of a specific error-like, laser-like focus challenging the arbitration clause. Now, certainly by argument, you can extrapolate the challenge to the arbitration clause to the challenge to the enforceability of the contract. And that would be the unconscionability argument under Illinois law. But it seems to me that's very different from a laser-like focus, if I can characterize it that way fairly, to the arbitration clause, which would not deprive us of jurisdictions. Does that make sense to you? It does, Your Honor, except I would dispute that this is a laser-like focus. The challenge is, the procedural unconscionability argument is a validity challenge. That is distinct from a challenge to whether a contract exists. So when the plaintiffs say there is no mutual assent, what they're saying is that there's no contract, there was no meeting of the minds. The district court decided this under procedural unconscionability, which is a validity doctrine. And Rent-A-Center says, and Rent-A-Center in fact held that this is a validity challenge as distinct from a formation challenge, that when the grounds being offered, when the basis for the challenge affects the contract as a whole, that is what triggers the Rent-A-Center issue. And here, the challenge, the argument is, we never saw the provider agreement, the pharmacy agreement. And that argument is not laser-like focused on the arbitration provision. It would affect the entire argument as a whole. And Rent-A-Center, the district court actually made this finding in appendix page 12. The record demonstrates that defendant prohibits PSAOs from giving the provider agreement to the individual pharmacies. That is not specific to the arbitration provision. If this argument is accepted, it would affect the entire arbitration provision. And under the analysis of Rent-A-Center, that is what the arbitrator should decide in the first instance, not the district court, because it isn't specific to the arbitration. Well, does Buckeye check cashing at all undermine that argument? Or Prima Paint? Or Prima Paint, which Buckeye relies upon. No, Your Honor, because the argument, again, the argument is, the grounds that are being offered would affect the contract as a whole. And that's exactly what Buckeye and Prima Paint had determined. If the challenge were that the arbitration provision was in fine print, or it was hyperlinked to a website- Well, here it's even worse, because they're saying we weren't even allowed, at least it was in fine print, we could read it, put it in our trifocals and try to find it. Here it's even worse, because the terms of the agreement between the intermediary and Optum prevented us from even seeing the fine print. We couldn't find out about it. And Ms. Comer's testimony, or Tamer, I think her name is, reconfirms that and says, yeah, the contract prohibits certain things from being communicated, absent consent, which wasn't obtained here. Two points, Your Honor, though. That argument applies to the entire provider agreement. And the deposition testimony that Your Honor referred to was not specific to arbitration. In fact, that was not arbitration discovery at all. That was about the non-arbitrating pharmacies. So that was about the entire provider agreement, not the arbitration clause. And again, because this argument sweeps more broadly than the arbitration clause itself, it actually triggers Prima Paint, it triggers the Buckeye rule and the Rent-A-Center rule, because it would affect the contract as a whole. And I quote the language from Rent-A-Center, even where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate, which was part of the contract, we nonetheless require the basis of the challenge to be directed specifically to the agreement to arbitrate before the court will intervene. Again, here, the basis of the challenge affects the entire contract as a whole, not just the arbitration provision. It would be different if the challenge were that the arbitration provision alone were written in fine print or hyperlinked. That would be a neutral challenge that affects only the arbitration provision, not the contract as a whole. But that's not what's being alleged here. I'm going to back up for a second. I mean, Judge McKee's question is, you know, who decides this particular question relating to is it the court or is it the arbitrator? And it looks to me, I mean, there's a good argument that you forfeited the who decides argument. You argued that the pharmacy's procedural unconscionability challenge was not directed specifically to the arbitration clause. You never cited Buckeye or Prima Paint, never mentioned the separability doctrine, which separates arbitration from the rest of the agreement, and never suggested that the unconscionability argument should be directed in any form other than the district court. Respectfully, Your Honor, it's important to understand how this was presented to the district court. It was presented as a challenge to mutual assent. And that is a formation challenge. And we don't quarrel with the court's holding under MZM construction that true formation challenges are issues for the court to decide. But the district court decided it as a validity matter. And I point to the court's citation to the Zaniga v. Major League Baseball decision, which draws this distinction. Very well, it says we are not this is quoting from the Zaniga decision, we are not deciding the broader question of whether the plaintiff entered into a contract with the Cubs. By using the ticket to enter Wrigley Field, the plaintiff did not dispute the issue of contract formation in the trial court. Therefore, we limit our review to the question of the unconscionability of a specific provision of the party's contract. So if the is an issue for the court to decide, when the court decided as a validity challenge, that was the rent a center issue that should have been decided in the first instance by the arbitrator. And and when the district court decided that issue, it was fully presented. It's the same argument that we have been making since the start of this case that the plaintiffs are trying to have it both ways, they are trying to retain the benefits of the contract as a whole, but only target one specific provision only invalidate or render unenforceable one specific provision, the arbitration provision, but they their arguments, the grounds they are offering affect the entire contract. And so they can't have it both ways. We've been making that argument all along, when it's decided as a that is the rent a center issue that we are pressing on appeal. If this were a true, I beg your pardon. If this were a true formation challenge, it actually would be decided very easily and simply under agency law principles, an agent that is acting with the authority of a principle in the scope of their authority finds the principle regardless of knowledge. This is not the case, but I don't think whether that's the case, because the point is that there is a document out there that has an arbitration provision, at least one of the agreements, not the manual, but the agreement. And you're going what? I never saw that document. And then Miss Tanner says, Yeah, basically, we weren't supposed to give over that document. So you can't play hidden ball and say now, okay, everything gets arbitrated. And it seems like the argument that you're making is okay, we're going to try to make some procedural arguments, we're now going to try to say there wasn't jurisdiction, we're now going to say that they really didn't challenge the arbitration provision, which they didn't know about initially. And, you know, usually, you find most courts are trying to get to the merits if they can. And I'm not finding a whole lot of reason not to try to get to the merits, or at least go to a process following we Dottie as to how you do get to the merits. Well, we so I'll come to the point in a moment. But the document that you're on a reference is the entire contract. And again, the deposition testimony was only about Brianette, which was the PSA, oh, that does not have an arbitration provision with Optum. So it is not a full factual record. And under we Dottie. If we were we filed a motion for a motion under the 12 v six standard under the first prong of what Adi and the plaintiffs can come forward with and so the court decides that issue based on the complaint and documents incorporated by reference in the complaint, the plaintiffs can come forward with evidence that creates a material factual issue as to arbitrability. They did they put forward evidence. We don't agree that it created a factual issue, but the district court found that it was an issue. At that point, we Dottie is very clear as to what happens. The district court does not decide the merits on a 12 v six. It allows for limited jurisdictional or limited arbitration discovery, and then a renewed motion to compel arbitration under a summary. But there was no discovery conducted as it applies to the vast, vast majority of the plaintiffs in this litigation, right? That's, that's correct, Your Honor. In fact, the motion to compel arbitration was filed back in March of 2018. And the court doesn't deny the motion to compel until May of 2021, a little over three years. What, what went on during those three years? Yeah, just the words up my mouth. The case remain that the motion remained pending. The discovery proceeded as to the non arbitrating pharmacies, the non arbitrating pharmacies. And in fact, the district court, if I recall, in his opinion, makes reference to discovery being conducted. But it wasn't discovery that was applicable to what he was being called to rule on, was it? That's exactly correct, Your Honor. And the district court was simply mistaken. That's the best of red herring in the in the opinion of the district judge. In fact, there was no discovery conducted as would be applicable to what we're called upon to deal with here today. That is correct, Your Honor, we stood on our 12 v six motion and our motion to compel arbitration under that standard and still do. But if the court finds that there is a factual issue as to arbitrability, we thought he is very clear what happens next, limited discovery into arbitrability into the factual issue and then renewed a renewed motion to compel under a summary judgment standard. You agree as to the pharmacies that did not have as to the pharmacies that had a direct relationship with your client. There's no issue here. That should that requires discovery. As to the pharmacies with a direct with a direct contract, they did not challenge arbitration. They did not challenge. OK, so it would be the in the pharmacies who went through the PSAO that are not challenging the arbitration clause. That's where there should have been discovery. I believe the only pharmacies that are not challenging arbitration are the 20 that had direct contracts with with with Optum. OK, and and they do argue now they did not make this argument in their original opposition, but they do argue that there is a substantive unconscionability issue. We would dispute that that that that is something that is timely presented. And it's also it's also directed that the attributes of arbitration itself, it's clearly foreclosed by Kindred Nursing and Lambs Plus and a number of Concepcion and a number of other Supreme Court decisions. So we think that issue can be easily resolved. But at a very at the very minimum, those those questions who did not challenge arbitration should should be compelled to arbitrate. I am over my time. So, yes, if there are other questions, we'll hear what Mr. Cooper has to say. Thank you, Mr. Johnson. Mr. Cooper. Yes, may it please the court. Mark Cooper for the Apple leaves. The reason there was no discovery taken was that Optum never asked to take discovery and never took discovery. If you look at docket entries, 68, 88, 89, 169, 204, you will see that there was wide open discovery permitted between September 2018 and November 2020. It's not saying we have don't we have an overriding opinion that requires limited discovery when the validity of an arbitration provision is not apparent on the face of the pleadings. You have an opinion that says that, but the burden of proof was on Optum to show the existence of an agreement to operate to to arbitrate. And I took discovery. I the discovery I took of Terry Tanner was not limited just to one PSAO. She was identified as Optum's corporate designee on Optum's policies and procedures concerning the provision of copies of the provider agreement to pharmacy providers. So I took discovery. They sat on it for two years and never took any discovery of this issue at all. The first time they were asking for discovery is on So the trial judge was right to decide on the record before him and the record before him shows that as Judge McKee pointed out, and I can go into it again, the pharmacies could not have seen this arbitration clause. And let me just let me just go into a couple other issues. Okay. Um, bear in mind that the contract is signed by the PSA. The when you want to look at appendix page 504, it says by signing below each party acknowledges read, understand and agrees to be bound by the agreement and the PSAO then signs it. Kerry Tanner testified unequivocally. When I read to her the confidentiality language in the agreement, pharmacy will not share information concerning the terms of the agreement. I'm sorry, unless required to do so by operation of law or order of a court pharmacy. And I asked her pharmacy is the signatory on the contract. Correct? Yes, it is. Pharmacy will not share information. Was it the policy of the company, the signer of the contract should not share any information concerning the terms of this agreement with a non signing pharmacy without first seeking permission of SXC. But what we're saying is, it looks like there was some discovery here. But it was between it looks like it was just limited to the parties who didn't have an arbitration provision in their agreement. Is that correct? No, there was there was nothing if you look at those case management order, there was nothing in those case management orders that precluded opting from taking discovery of the parties from whom case management orders do not, is a matter of course, preclude someone from taking discovery, they set up discovery schedules. Correct? That's correct. Was that done? Yes, there was a basically there was two years to take discovery, they chose not to take or sell it to a rule 16 order. Yes. And it was extended numerous times. But that was their choice. They chose to rise or fall on the record that was before Judge Banyan when he decided it, and they fell. Now they can't come to well, now we want to take that position. They just can't do that. And let me go back to this jurisdictional issue a statutory one or the contractual one or both? I guess what the argument that their failure to raise the prima pain issue could not was not waivable because it went to the issue of jurisdiction. I certainly I know I'd had to get the other one at the end. I've got to save that for the end. Obviously, that needs to be addressed. First of all, this contract has no delegation clause at all. It's not so completely inapplicable. That's a case involving a delegation clause without an actual delegation clause. It's presumed that our decision of arbitrability is for the court. And they asked the court to decide it. They directed their motion to the court. Secondly, had the motion to compel arbitration been granted this court with the court would not have dismissed for lack of jurisdiction. Under Lloyd versus Hobenza, Third Circuit case, the court would have simply stayed the case. arbitration would have occurred. And then if there are any issues, it could have gone an appeal from arbitration or motion vacate would have gone back to the court, the court would have retained jurisdiction. So this issue was absolutely not jurisdictional. And let me just raise another point here. We made an argument in the lower court, the lower court never got to because of its ruling. If you actually read that arbitration clause, it says the parties are required to arbitrate. And we're not parties. We didn't sign it. Carrie Tanner said we're not a party signing it. The agreement identifies the party as the person who's signing it. We're not even parties. But the court didn't even get that far. And we don't need discovery on that issue. It's on the face of the agreement. So nor are we challenging the entire contract. Because we've, we've asserted claims under this agreement for about 120 of the pharmacies. This is akin to a case with a case we cited, somebody you buy a car, you know, there's a warranty, open the glove box, there's an you're just not bound by the arbitration clause, there was no meeting of the mind, there was no assent. So that's what you say in response to the ratification argument. Right. But I'm also saying that I'm also, that's true. But I'm also saying that in response to the argument, Mr. Townsend himself said they're not there are certain claims under the agreement. Yes, under Illinois law, a non signatory can assert rights under a contract, and not be required to arbitrate under it. We cite the leading case that is, I think, Evans versus Nokia, page 27 of our paper, there's some other cases as well. So we were only attacking the arbitration clause. And more fundamentally, if we want, let me talk about MGM a little bit. Under MGM, as I understand it, if you sign an agreement as an arbitration clause, and you know, it's got an arbitration clause, but you were fraudulently induced to sign it, or the agreement is not valid for lack of consideration, or illegal because it's a usurious contract like Buckeye. Okay, under the severability of document doctrine for the arbitrator. Okay, if you if you sign an agreement and don't know there is an arbitration clause, the very ascent to the arbitrate is called into question. And it's an issue for the court. You're arguing South Jersey as opposed to MGM. Jersey incinerator, I think it is. I think MGM, I think our case is more like MGM, because there are cases in MGM, the woman didn't know there was a arbitration clause. But arguably, she could have known, because she could have asked for the agreement. She could have seen it, she never asked for it. Our people had no idea. We pleaded to paragraph 450 of the complaint, that the arbitration clause is hidden from us. You can't, you can't have a rule that says that we hide in our we if we hide the agreement from you, and it has an arbitration clause and one other paragraph. Under the severability of doctrine, you have to arbitrate because you're that you can have an agreement like that, especially when there's no delegation clause. So, um, like I said, you look at this case, let me just go back to the discovery issue. Optum had an opportunity to take discovery. It's not like they asked for discovery. And I have, I never objected to any discovery. They wanted to take, they chose, they had two years to take discovery on this issue. They filed their motion under 12 B six, they filed their motion on the to rule in it as a matter of law, they failed as a matter of law, and they can't get out of that. Okay, let me just go back to the issue of Catholic jurisdiction, excuse me. Great. First of all, let me just say, in the event this court finds there is no original jurisdiction under CAFA, we would, we've already noted, there's only three non diverse plaintiffs out of over 400. And they could be dropped, and we would have complete diversity. Everybody's alleged damages over $75,000. And under Newman green, we would ask to cure the jurisdictional defect. We've got eight non arbitrable pharmacies who went through five years of discovery expert reports, cross motions for summary judgment fully briefed. We obviously don't want to lose that. And I respect the statement of one of the judges earlier today that you want to avoid piecemeal litigation. So now, why is there federal jurisdiction under CAFA? I think Judge Smith really put it best. Look, CAFA identifies paragraph two of the purposes of the statute B two, the only paragraph that that addresses the jurisdiction issue. The purpose was to restore the intent of the framers of the US Constitution by providing for federal court consideration of interstate cases of national importance under diversity jurisdiction. What's an interstate case of national importance? Well, for class actions and mass actions, the same thing, at least 100 people over $5 million in controversy, and it doesn't fall within the carve outs of 1332 D three to D 10. Now, what what offers what optimum is saying is I should have filed this case in Spookle County, and let them remove it. Congress really intended I filed this case in Spookle County, the Congress intended of a cases of national importance that only the defendant gets to put it in federal court. That makes just doesn't make any sense. So I recognize there's a tension in the any reasonable person have to say there's a tension, but that tension has to be resolved in favor of fulfilling the statutory purpose, not negating the statutory purpose. So I think the court should find there is original jurisdiction under CAFA. I think that's the only interpretation of the statute that makes sense. Are there any other questions for me? I have none. I have none. Thank you, Mr. Cooker. Mr. Thompson, I believe you deserve some time for rebuttal. Yes, I did. Thank you, Your Honor. I want to start with the rule 21 point that was just discussed, dismissing the three plaintiffs. In this case, three California plaintiffs would not we would not concede that that creates diversity jurisdiction. The complaint does not even allege Optum's citizenship. And there are 430 some plaintiffs in this case, many of them dozens of LLCs. There very likely would need to be some jurisdictional inquiry, some discuss that would need to be carried out in order to determine whether there is complete diversity and whether the amount and controversy requirement is satisfied. The record actually contains conflicting evidence on amounts and controversy as to several of the pharmacies that submitted declarations in this case. So I'm sorry to interrupt you, Mr. Townsend, but the the the CAFA jurisdictional issue is one that we raised with the parties. And I would prefer that you use the time allotted to you and rebuttal is to address the elephant in the room. And that is the lack of discovery and your failure to pursue discovery during the period of time that has been referenced by Mr. Cooker here, you chose to file a 12 v six motion. According to him, you chose to sit by and not pursue discovery in any way until you ask word on appeal. What's your response? My response, Your Honor, is that we did not have to concede that there was a factual issue and take discovery on it, we filed a 12 v six motion. And we don't have to concede and take discovery into issues that we don't believe exist on the face of the complaint, and on documents incorporated into those complaints into the complaint by reference. And so when the district court rules on a 12 v six motion discovery follows as a matter of course, under the rules of civil procedure and under the courts holding in Guadalquivir. And the party that's filing the 12 v six motion does not have to alternatively admit that there is a factual issue that requires discovery. They have the right to stand on their motion as we did. The real problem comes from the fact that it did take three years for a ruling. In this case, we certainly didn't expect it to take that long when we filed our motion. But we did stand on our motion to stand on our motion that this issue can be easily resolved under a 12 v six standard. The district court found a factual issue. And this is that appendix, page six plaintiffs have brought forth sufficient facts to place the agreement to arbitrate an issue. And then and then goes on, rather oddly to say, however, at this stage of the litigation, in other words, a number of years later, the parties have already engaged in discovery. And of course, we've already covered the fact that he's wrong there in terms of who engaged in discovery and have submitted several supplemental filings with the court in relation to the issue of arbitrability. That's correct, Your Honor. And and even under Rule 12d on a regular 12 six motion to compel, if the court converts that into a summary judgment motion, the court has to tell the parties in advance to do that and allow discovery it did not happen here, the court just decided it under a summary judgment standard. So we do believe that if there is a factual issue, if the court does believe there's a factual issue, the next step is to allow limited discovery on the issue of arbitrability and then a renewed motion to compel under the summary judgment standard. The one final point I'll make with respect to the rent a center issue. Yes, there is not a delegation clause in this case, rent a center specifically address that and said, it doesn't matter. The existence of a delegation clause does not matter the rule of prima pain and Buckeye still applies. And so I think my time is up. And I'll stop there unless there are any further questions. No questions. Thank you both very, very fine, informed and responsive arguments greatly appreciate makes our job easier and even more enjoyable when we engage with such well informed and knowledgeable council. So thank you very much for your diligence and your representation. Thank you. Thank you. Take the veterans advisement.